IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| CHERRIE KEMP,<br>   O/B/O BRIAN ARMSTRONG,<br><br>      Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br><br>      Defendant. | Case No. 06-0990-CV-W-NKL-SSA |

**ORDER**

Pending before the Court is Plaintiff Cherrie Kemp's ("Kemp") Motion for Summary Judgment [Doc. # 7]. Kemp seeks judicial review of the Commissioner's termination of Brian Armstrong's supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, et seq. The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary.[1] Because the Court finds that the Administrative Law Judge's decision is not supported by substantial evidence in the record as a whole, the Court reverses the ALJ's decision and remands with directions to continue Brian Armstrong's supplemental security income benefits.

---

[1]Portions of the parties' briefs are adopted without quotation designated.

1

## I. Background

### A. Procedure

Plaintiff Brian Armstrong ("Armstrong") was originally awarded disability benefits beginning November 1996. He was born at 28 weeks' gestation, on November 21, 1996, and as a result, had several medical problems. In March 1997, the Social Security Administration found that Armstrong's impairments satisfied the requirements of Listing § 103.102E, Chronic Pulmonary Insufficiency. In 1999, upon review by the Commissioner, Armstrong's benefits were continued with the finding that his condition functionally equaled Listing §112.020 - Organic Mental Disorder and § 111.09A - Communication Impairment.

On March 6, 2003, Armstrong's benefits were terminated based on the Commissioner's determination that medical improvement had occurred. (Tr. 75-78.) After a de novo hearing, an ALJ terminated Armstrong's benefits after finding that there had been medical improvement and Armstrong was no longer entitled to disability benefits. Armstrong now appeals the ALJ's decision. (Tr. 15-24.)

### B. Relevant Facts

At the time of termination, on July 25, 2003, Armstrong was six years old. He was nine years old on April 6, 2006, when his case was heard by the ALJ. (Tr. 15-24.) In April 2002, when Armstrong was five years old, an individual education plan ("IEP") was implemented by the Kansas City Missouri School District to assess whether special education services would benefit Armstrong. (Tr. 298-311.) As justification for the plan,

the school stated that Armstrong needed a highly structured environment, required focused and direct instructions, and needed frequent repetition of directions. (Tr. 299.) The plan indicated that Armstrong continued to make "slow progress," noting that he is incapable of identifying shapes or colors, misuses pronouns, requires verbal and physical prompts to follow directions, and exhibits "serious attention problems which interfere with learning." (Tr. 309.)

A diagnostic summary report was performed a month later to re-evaluate Armstrong's special education plan. (Tr. 317-24.) As part of the evaluation, Armstrong was observed in a classroom setting by Paula Rios on February 19, 2002. (Tr. 318-19.) Ms. Rios noted that Armstrong talked to himself the entire time, and was never quiet. (Tr. 318.) She further noted that Armstrong's speech was difficult to understand. (Tr. 319.) A learning accomplishment profile performed on March 11, 2002, indicated that Armstrong's motor skills were greater than 1.5 standard deviations below the mean. (Tr. 319.) During the individual testing process, it was noted that Armstrong demonstrated a "very short attention span." (Tr. 320.) Intelligence tests indicated that Armstrong's general level of intellectual functioning was within the low average range, noting weaknesses in verbal comprehension, knowledge of English syntax, and part-to-whole synthesis spatial visualization discrimination of details from non-essential details. (Tr. 320.) Armstrong's skill developmental range indicated a 17 month delay in personal-social skills and a 26 month delay in communication skill. (Tr. 321.)

Furthermore, Armstrong exhibited poor attention and highly distractible behaviors. (Tr. 322.)

Armstrong underwent a psychological evaluation on April 3, 2003. (Tr. 714-16.) During the evaluation it was observed that Armstrong's attention span was "extremely limited," noting that sounds from outside the testing area easily distracted Armstrong from completing the task and redirection was often necessary. (Tr. 714.) The Woodcock-Johnson Tests of Achievement was administered revealing that Armstrong exhibited difficulty in broad reading. (Tr. 715.) It was further noted that Armstrong was unable to accurately print his first name, identify all the alphabetical letters and appropriately write letters. (Tr. 715.) Many of Armstrong's letters were printed backwards and some of them were unidentifiable. (Tr. 715.) Further, Armstrong was unable to add sums to ten, and many of the numbers were printed backward. (Tr. 715.) The Adaptive Behavior Evaluation Scale indicated that Armstrong was incapable of taking care of personal property, demonstrating appropriate behavior, making appropriate use of free time, displaying the appropriate social interactions, and responding appropriately to friendly teasing. (Tr. 716.)

In an April 8, 2005 letter, Sheila F. Samuels, Armstrong's second grade teacher, noted that Armstrong "is challenged daily with basic learning skills." (Tr. 362.) Ms. Samuels reported that Armstrong has difficulty remembering what was taught the day before, despite trying to remember. (Tr. 362.) She further noted that he reverses numbers and letters and has difficulty spacing his words. (Tr. 362.) Ms. Samuels reported that

4

Armstrong does not respond to corrections and becomes upset when corrected.  (Tr. 362.)
She opined that Armstrong appeared to need a smaller learning environment, with a few students, and two or more teachers.  (Tr. 362.)

A week later, Ms. Samuels completed a teacher's report based on her experiences with Armstrong.  (Tr. 358-361.)  Ms. Samuels reported that Armstrong is far below grade level in reading, math, social studies, science, and handwriting.  (Tr. 358.)  She further noted that based on the most recent achievement test from September 2004, Armstrong is functioning at a Pre-Kindergarten-Kindergarten level in math and reading.  (Tr. 359.)  Ms. Samuels reported that Armstrong is unable to remember anything he learned the week, day, or hour before, further noting that he writes backwards and his work is not legible.  (Tr. 359.)  At times, she reported that she must repeat instructions three to five times before Armstrong understands.  (Tr. 359.)

In 2005, Armstrong attended Trailwoods Summer School.  (Tr. 363.)  In a weekly June progress report, Ms. Jackson noted that Armstrong is "easily distracted and has a hard time staying on task."  (Tr. 363.)  She further noted that Armstrong was having a hard time completing the work because it was too difficult for him, causing him frustration.  (Tr. 363.)  The following week on June 29, Ms. Jackson reported that Armstrong had a hard time following directions, completing assignments, and staying on task.  (Tr. 392.)  She noted that he needed constant reminders and his behavior still had not improved.  (Tr. 392.)  Ms. Jackson made a similar report on July 5, noting that Armstrong had a rough day, completing very little work.  (Tr. 392.)  Ms. Jackson reported

5

that Armstrong again had a rough day on July 13, talking non-stop and making continuous noises that disturbed the other students. (Tr. 391.) The July 22 progress report indicated that Armstrong's grades were not based on the third curriculum, but on effort. (Tr. 393.) Ms. Jackson opined that Armstrong should be re-tested next year, noting that he "really needs intervention." (Tr. 393.)

On April 4, 2006, the same month as the hearing before the ALJ, Cynthia Kirkpatrick, Armstrong's third grade teacher, completed a teacher questionnaire in which she detailed his classroom functioning in comparison to other children in her class. (Tr. 396-403.) Armstrong was nine years old at the time. Ms. Kirkpatrick reported that Armstrong was reading on Kindergarten level, as well as receiving weekly speech assistance. (Tr. 396.) Ms. Kirkpatrick evaluated Armstrong using the same six domains technique that Social Security uses when evaluating children's disabilities. (Tr. 397-402.) Under the heading, "Acquiring and Using Information," Ms. Kirkpatrick noted that Armstrong had a very serious problem expressing ideas in written form, and a serious problem comprehending instructions, understanding vocabulary, reading and comprehending written material, providing organized oral explanations, and learning new material. (Tr. 397.) Ms. Kirkpatrick noted that she spends extra time with Armstrong on a daily basis. (Tr. 397.) She further noted that when Armstrong writes, he just puts letters down and does not spell anything. (Tr. 397.) Under the heading, "Attending and Completing Tasks," Armstrong was noted to have serious problems in focusing long enough to finish assigned tasks, organizing his own materials, completing assignments,

6

completing work without careless mistakes, working without distracting others, and working at a reasonable pace. (Tr. 398.) Ms. Kirkpatrick noted that Armstrong has difficulty working independently and needs an adult to oversee work to completion. (Tr. 398.) Under the heading "Interacting and Relating with Others," Armstrong was noted to have a serious problem with seeking attention appropriately and respecting and obeying adults. (Tr. 399.)

In the Diagnostic Summary Report dated June 19, 2002, intelligence tests revealed that Armstrong was functioning in the low average range. (Tr. 320.) Armstrong's relative strengths were in concept formation, visual memory, mathematical concepts/computation, ability to analyze work problems and meaningful long-term memory. (Tr. 320.) Language skills were functional as compared to peers in the same age group. (Tr. 322.) Speech language skills were adequate for academic needs. (Tr. 322.) Articulation skills were within normal limits. (Tr. 322.) Armstrong, according to this report by the Kansas City, Missouri School District, had made "wonderful progress." (Tr. 322.) In a footnote the school stated "Intelligence tests indicate that general level of intellectual functioning is within the low average range. . . . Adaptive behavior functioning was observed to be below measured intellectual functioning." (Tr. 320.)

## II.  Discussion

While several issues were briefed by the parties, both Armstrong and the Commissioner, at oral argument, agreed the Court should focus on the question of whether or not there is substantial evidence in the record as a whole to support the ALJ's

7

determination that Armstrong was not disabled at the time of the hearing. To resolve that issue, the Court must determine whether the record as a whole supports a finding that Armstrong had a marked limitation in at least two domains.

Armstrong contends that the ALJ erred when he found Armstrong's impairments were not severe enough to meet or medically equal any listed impairment in §§ 112.00 et seq. A child's impairment is functionally equal to a listed impairment if there is an "extreme" limitation in one of the six functional domains, or a "marked" limitation in at least two domains. A "marked" limitation in a domain is defined as an impairment that "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities." *See* 20 C.F.R. § 416.926a(e)(2)(i) (2002).

The government admits that Armstrong has established one of the functional domains in § 112.00 et seq - Attention Deficit Hyperactivity Disorder. The parties, however, dispute whether there is substantial evidence in the record as a whole that Armstrong had a marked limitation in acquiring and using information.

In support of his decision that Armstrong had less than a marked limitation in acquiring and using information, the ALJ noted that Armstrong's most recent IQ score was in the 80s, representing a low average level of intellectual capacity. (Tr. 21.) What the ALJ failed to notice is that in the same report as the IQ testing, weaknesses were noted in verbal comprehension and knowledge of English syntax. (Tr. 320.) Likewise, the ALJ failed to mention that in the same report the examiner stated Armstrong was

8

unable to accurately print his name, identify all the alphabetical letters, and appropriately write letters. (Tr. 715.)

Social Security Regulations provide guidelines to evaluate marked impairments within the domain of acquiring and using information.[2] School-age children should be able to learn to read, write, and do math, and discuss history and science.[3] Additionally, a school-age child should be able to use increasingly complex language to share information.[4] Examples of marked or extreme impairments in this area include a child that has difficulty recalling important things learned in school, demonstrating understanding of words about space, size, or time, and only talks in short, simple sentences, having difficulty explaining what he means.[5]

Throughout the record it is noted that Armstrong has difficulty in reading, with reports as recently as April 2006 that Armstrong continued to function on a Kindergarten level in this subject. (Tr. 359, 397, 715.) In addition, Armstrong's teachers have consistently noted Armstrong's difficulties in writing, reporting that Armstrong prints letters backwards and has problems with appropriate spacing, making his work illegible. (Tr. 55, 358, 359, 362, 397, 715.) Following a January 2003 consultative examination, Dr. Prestage noted that Armstrong had difficulty making letters, was unable to spell his

---

[2] 20 C.F.R. § 416.926a(g)(2)(iv) (2002).

[3] *Id.*

[4] *Id.*

[5] 20 C.F.R. § 416.926a(h)(3)(iv) (2002).

9

name, and did not recognize all of the letters of the alphabet. (Tr. 667.) Three years later, Armstrong's third grade teacher reported similar issues, noting that Armstrong simply puts down letters and does not spell anything. (Tr. 397.) Moreover, Armstrong's second grade teacher reported that Armstrong was unable to remember anything that he learned the prior week, day or hour. (Tr. 359, 362.) Social Security Regulations specifically cite this as an example of limited functioning within this domain.[6]

The substantial evidence of record supports a finding that Armstrong has a marked limitation in the domain of Acquiring and Using Information. There is not substantial evidence in the record to support the ALJ's contrary conclusion. Therefore, the ALJ erroneously found that Armstrong was not entitled to benefits and the Commissioner is ordered to continue Armstrong on supplemental security income benefits.

**III.    Conclusion**

Accordingly, it is hereby

ORDERED Plaintiff's Motion for Summary Judgment [Doc. # 7] is GRANTED. The decision of the Commissioner is REVERSED and REMANDED with instructions to award benefits.

                                                              s/ Nanette K. Laughrey
                                                           NANETTE K. LAUGHREY
                                                           United States District Judge

Dated:  October 5, 2007
Jefferson City, Missouri

---

[6] 20 C.F.R. § 416.926a(3)(iii) (2002).